IN RE APPLICATION OF HOLBROOK.

[Cite as *In re Application of Holbrook,* 116 Ohio St.3d 248, 2007-Ohio-6095.]

(No. 2007–0683—Submitted September 18, 2007—Decided November 21, 2007.)

**Per Curiam.**

{¶ 1} Applicant, Melinda Long Holbrook of Powell, Ohio, graduated from Capital University Law School in May 2006. On January 13, 2006, she applied to register as a candidate for admission to the Ohio bar. See Gov.Bar R. I(2). On March 31, 2006, she applied to take the July 2006 bar examination, updating her candidacy application as required by Gov.Bar R. I(3).

{¶ 2} In early July 2006, the Delaware County Bar Association's Admissions Committee expressed concern over Holbrook's pending bankruptcy and allegations that she had failed to pay rent for almost one year. However, the admissions committee ultimately approved Holbrook's character and fitness, noting that her husband's severe alcohol and gambling addictions may have been the root of her family's financial problems.

{¶ 3} Pursuant to Gov.Bar R. I(10)(B)(2)(e), which allows the Board of Commissioners on Character and Fitness to investigate sua sponte an applicant's character and fitness at any time prior to admission to the bar, the board appointed a panel to review Holbrook's qualifications. The panel heard the cause on January 19, 2007, and unanimously recommended that Holbrook not be approved to take the February 2007 bar examination but that she be allowed to take the February 2008 examination if she is able to demonstrate her financial and moral responsibility at that time. The board adopted the panel's report but recommended that Holbrook not be permitted to reapply until the July 2008 bar examination.

### The Board's Findings

{¶ 4} Holbrook's husband operated Holbrook Electric, an electrical contracting company in Kentucky, from 1996 to 2003. For several years until 2001, Holbrook was the office administrator for the business and was responsible for keeping the company checkbook, doing payroll, and paying local and payroll taxes. Holbrook admitted that she served in this capacity until 2001, but she characterized her duties as simply following the instructions of her husband.

{¶ 5} Beginning in 2001, Holbrook Electric began to have financial difficulties that eventually spread to the Holbrooks' personal finances. Holbrook claimed to have had no real knowledge of these problems. In 2003, the couple stopped making payments on a house in Kentucky that they owned as an investment. The property eventually went into foreclosure.

{¶ 6} The Holbrooks sold their home and moved to Ohio in July 2003. Despite the couple's financial difficulties, Holbrook enrolled at Capital University Law School in August 2003.

{¶ 7} When the Holbrooks moved to Ohio, they signed a contract to purchase a $587,000 home in New Albany. Because they were unable to obtain financing, the Holbrooks entered into a short-term lease with an option to buy. The lease payment was $4,500 a month. Other than an initial down payment of $9,500 and a second payment of $8,000, the Holbrooks did not make any payments for the New Albany residence. After living in the house for approximately eight months, they moved into a motel for several weeks. The Holbrooks subsequently rented homes in Dublin and in Westerville.

{¶ 8} In November 2003, RLI Insurance Company, in its capacity as surety for a construction bond issued on behalf of Holbrook Electric, sued Holbrook Electric and the Holbrooks in federal district court. Holbrook was served with the summons and complaint, but she (and her husband) ignored the service of process and allowed RLI to obtain a default judgment in excess of $170,000. In 2004, the Holbrooks defaulted on a surety bond of over $1 million issued by Western Surety.

{¶ 9} On October 14, 2005, the Holbrooks filed a bankruptcy petition in the United States Bankruptcy Court, Eastern District of Kentucky. The bankruptcy petition reflected a variety of unpaid bills for cell phones, credit cards, home garbage collection, utilities, and purchases from a women's clothing store. Holbrook testified that while the couple was accumulating additional personal debt, including Holbrook's law school tuition, she drove a Mercedes Benz and did not work or seek employment.

{¶ 10} The board concluded that the testimony and documents in this matter reflected an applicant who had not been totally candid and had not been responsible in the management of her financial affairs. The board found that Holbrook had a cavalier attitude about her spending in light of her mounting financial problems. The board questioned Holbrook's professed lack of awareness of the extent of the financial problems in light of the foreclosure on the house and the significant default judgments against her and her husband on surety bonds. "Despite all of this, Ms. Holbrook continued to conduct herself as if there were no financial issues whatsoever. * * * [S]he came to Ohio, enrolled in law school, signed a contract for an expensive home, drove an expensive car, and continued to otherwise spend money as if there were no problems. When questioned about this, she attributed all responsibility to her husband. She denied knowing about the problems and blamed everything on her husband's drinking and gambling." According to the board, however, it was clear that Holbrook's husband "was merely adhering to the 'party' line," that his alleged

drinking and gambling did not cause the couple's financial situation, and that his wife had some understanding of their financial situation.

## Review

{¶ 11} Upon review, we disagree with the board's finding that her husband's compulsive gambling played no part in Holbrook's financial problems. We find that her husband's gambling losses significantly contributed to the family's financial downfall.

{¶ 12} Holbrook has submitted supplemental evidence to this court detailing her husband's gambling activities. Specifically, this evidence shows that Holbrook's husband has lost hundreds of thousands of dollars at various casinos and Internet gambling sites in the years leading up to the couple's bankruptcy. The entire record shows that Holbrook's husband concealed the full extent of his gambling, and it appears that Holbrook was not aware of the magnitude of her husband's gambling losses until after the hearing before the panel. Moreover, we find that her husband's deception in concealing his gambling losses buttresses Holbrook's claim that after 2001 she was largely in the dark regarding the financial soundness of her husband's company and that she was not fully aware of their mounting financial problems before she entered law school.

{¶ 13} Financial irresponsibility alone is grounds to disapprove a candidacy for the bar or an application to take the bar exam. *In re Application of Manayan*, 102 Ohio St.3d 109, 2004-Ohio-1804, 807 N.E.2d 313, ¶ 14. "We expect applicants for admission to the Ohio bar and bar members to scrupulously honor all financial commitments." Id. However, the reservations expressed by the board are tempered by the fact that Holbrook was unaware that her husband's staggering gambling losses had jeopardized the financial health of his company and his family's personal finances.

{¶ 14} For these reasons, we modify the board's recommendation that Holbrook be disapproved for admission and not be permitted to reapply until the July 2008 bar examination. Rather, we allow the applicant to reapply and sit for the February 2008 bar examination provided that she is approved to do so by the character and fitness board.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., dissents and would allow respondent to reapply as of July 2008.

---

Randall D. Fuller, for Delaware County Bar Association.

Melinda Long Holbrook, pro se.